KENNETH M. SORENSON
Acting United States Attorney
District of Hawaii

JEANNETTE S. GRAVISS
Assistant United States Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Blvd.
Honolulu, Hawaii 96850
Telephone: (808) 541-2850
Facsimile: (808) 541-2958
E-mail: jeannette.graviss@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No. CR 25-00104 DKW |
| ) | |
| Plaintiff, ) | UNITED STATES' MOTION TO |
| ) | REVOKE THE ORDER OF |
| vs. ) | RELEASE |
| ) | |
| JUSTIN C. LIKOUT, ) | |
|    a/k/a "Jaycee Thorpe," "JC ) | |
| Thorpe," "Justin Thorpe," ) | |
| "John Pyzell," "Jaycee Pyzell," ) | |
| "Jon Pizel," ) | |
| ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**UNITED STATES' MOTION TO REVOKE THE ORDER OF RELEASE**

The United States of America respectfully submits this motion pursuant to Title 18, United States Code, Section 3145(a) to revoke the defendant's order of release.

## **Background**

The defendant is charged with bank fraud in violation of Title 18, United States Code, Section 1344; wire fraud in violation of Title 18, United States Code, Section 1343; money laundering in violation of Title 18, United States Code, Sections 1956 and 1957; and aggravated identity theft in violation of Title 18, United States Code, Section 1328A. The United States filed a motion for detention pursuant to Title 18, United States Code, Section 3142. In its motion, the United States asserted that the defendant constitutes a risk of flight and a danger to the community. The United States maintains this position.

The defendant was arrested in Hawaii on October 16, 2025. The defendant made his initial appearance on October 20, 2025. The United States moved for detention and a detention hearing was held on October 23, 2025. Following the hearing, the magistrate judge denied the United States' motion to detain and set bond at $50,000 unsecured. The United States moved the court to stay the order of release pending an appeal of the release order. The court granted the United States' oral motion and stayed the execution of the release order until October 31, 2025.

## Argument

Title 18, United States Code, Section 3145(a) provides that:

> [i]f a person is ordered released by a magistrate judge, or by a person other than the judge of a court having original jurisdiction over the offense…(1) the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release.

The district court reviews orders granting or denying a defendant's pretrial release *de novo*. *United States v. Koenig*, 912 F.2d 1190, 1191 (9th Cir. 1990)

> [The district court] should review the evidence before the magistrate [judge] and make its own independent determination of whether the magistrate [judge]'s findings are correct, with no deference…The point is that the district court is to make its own "de novo" determination of facts, whether different from or an adoption of the findings of the magistrate [judge]…the ultimate determination of the propriety of detention is also to be decided without deference to the magistrate [judge]'s ultimate conclusion.

*Id*. at 1193.

The Bail Reform Act requires a defendant to be released pending trial unless a judicial officer determines that the defendant's release "will not reasonably assure the appearance of the defendant as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). If the judicial officer determines that no condition or combination of conditions can reasonably assure the defendants appearance or the safety of the community, the defendant shall be detained before trial. 18 U.S.C. § 3142(e)(1). To detain a defendant pending trial based on his risk

of nonappearance, the judicial officer must find by a preponderance of the evidence that the defendant poses a flight risk. To detain a defendant pending trial based on danger to the community, there must be a finding by clear and convincing evidence.

In making its decision, the Court is guided by Section 3142(g) which outlines the factors the Court must consider. Such factors include,

> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including-
>     (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>     (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

In the government's view, these statutorily proscribed factors weigh heavily in favor of detention.

*Nature and Circumstances of the Offense*

Title 18, United States Code, Section 3142(g)(1) requires the Court to consider the nature and circumstances of the offense charged. While the nature of the charges (bank fraud, wire fraud, money laundering, and identity theft) on their

face would not seem to weigh in favor of detention, the circumstances surrounding the offenses certainly do. The defendant is charged in twenty-four counts for offenses that began as early as 2018. The twenty-four counts include a mere sampling of the criminal offenses committed by the defendant over the past seven years. His conduct is ongoing, and he continues to steal personal identifying information from people and use that information to open accounts, apply for loans, and otherwise obtain money and other items through fraudulent misrepresentations.

The defendant also preys on elderly or vulnerable individuals and uses them to collect personal information to continue his schemes. The defendant uses fake names when developing these relationships to avoid being caught. When a search warrant was executed at the defendant's home on October 16, 2025, personal identifying information and identification of other individuals were found inside his home. The nature and circumstances of the charged offenses weigh in favor of detention.

### *The Weight of the Evidence Against the Defendant*

Section 3142(g)(2) requires the Court to consider the weight of the evidence against the defendant. The government submits that the evidence against the defendant is strong. The defendant has had dozens of bank accounts closed over the past seven years due to fraud and subpoenaed records show a pattern of fraud from applying for loans using the personal identifying information of other real

people, to submitting false documents in support of Paycheck Protection Program (PPP) loan applications, to inducing people to give him money in exchange for products or services, knowing that he would not provide the products or services.

In addition to the strong evidence supporting the charges in the indictment, when the defendant admitted to committing PPP loan fraud, check kiting, stealing personal information from various individuals, and applying for loans in the names of those individuals.  The defendant also admitted to taking money from people with the promise to provide goods or services and failing to give them their money back when the goods or services were not delivered.  The weight of the evidence against the defendant strongly suggests that he is guilty of the alleged offenses, which is relevant to his motivation to flee.

### *The History and Characteristics of the Defendant*

Section 3142(g)(3)(A) requires this Court to consider the history and characteristics of the person, including the person's character, physical and mental condition, employment, financial resources, length or residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history and record concerning appearance at court proceedings.  While the defendant appears to have some ties to the community, he misrepresented the extent of those ties to the pretrial services officer.

The defendant reported that he had been living at xx-xxx Kamehameha Highway for ten years. The defendant also reported that he owns the property, he does not. The property is owned by xx-xxx Kamehameha Highway Trust. The defendant does not have any interest in the trust and rented the property. According to his landlord, the defendant has been living there a little over a year. At the time he was arrested, there were eviction proceedings in effect for the property. The court ordered the defendant evicted on October 24, 2025.

The defendant also reported that he graduated from Punahou High School. The registrar at Punahou School indicates that there are no records concerning the defendant. *See* Exhibit A.

Regarding the defendant's degrees from the University of Washington, the defendant's friend and business partner reported to the pretrial services officer that he did not believe the defendant graduated from college.[1] The defendant's claim that he obtained his MBA from the University of Washington in 1999 is contradicted by court records showing that he was arrested in Maui County in October 1997 and in jail at least through 1998.

---

[1] The defendant's LinkedIn account indicates that he graduation from the University of Washington with "Bachelor of Engineer" – Structural Engineering. The University of Washington offers a Bachelor of Science in various engineering disciplines, not structural engineering.

7

It does not appear that the defendant has been engaged in lawful employment for many years. The defendant reported that he owns a woodworking business, Ho'ohui Ohana, that was started in 2023. As alleged in the indictment, the defendant advertised custom tables through Facebook Marketplace under the name Hoohui Ohana Millworks (and other names), and took money from people, did not deliver the tables, and did not return the money.

The defendant also reported to the pretrial services officer that he started a business focused on Porsche racing cars with a business partner, C.S. When the pretrial services officer spoke to C.S., C.S. said that the defendant had not been working and, to his knowledge, did not own any businesses.

The defendant has been arrested in Washington, Arizona, California, and the Virgin Islands. In addition to the aliases listed in the indictment, the defendant has used the names Jaycee Panacetti, Jaycee Panacelli, Edmond J. Cloutier, Jay Likout, Scott G. Ford, and Jake Keating.

The defendant's criminal history reflects that there are active warrants for his arrest in Washington for failure to appear for theft charges, in Florida for larceny and grand theft in the third degree, and in Maui for failure to appear.

Regarding the defendant's history and record regarding court appearances, the defendant has repeatedly failed to appear in court. The defendant was convicted of escape in 1997 in Maui, Hawaii. While on supervision following the conviction,

the defendant was arrested for felony theft in Washington in January 2003. In May 2003, the defendant was arrested on the parole violation in Honolulu, Hawaii. The defendant's next arrest was in 2006 in the Virgin Islands. The defendant was convicted of fraudulent use of credit cards.

In 2010, the defendant was arrested for assault and unauthorized possession of a firearm in the Virgin Islands.[2] While out on bond on those charges, on January 21, 2011, the defendant was arrested for obtaining money by false pretenses, grand larceny, and drawing and delivering more that $11,000 in worthless checks to businesses in St. Croix, Virgin Islands.[3] The defendant was also arrested in January 2011 for trespassing and operating a business without a license. After posting bond in those cases, the defendant failed to appear in court on February 1, 2011. A warrant was issued for the defendant's arrest, and he was not taken back into custody until April 11, 2011.

The defendant did not successfully complete the terms of his supervision in the Virgin Islands cases, however, because a petition for revocation was not filed during the period of supervision, in 2020, the defendant was administratively

---

[2] He was convicted of unauthorized possession of a firearm on November 22, 2011, and sentenced on March 2, 2012. The defendant's probation supervision began on June 20, 2013, and expired on June 18, 2015.

[3] He was later convicted of drawing and delivering worthless checks and sentenced on March 2, 2012. The defendant's probation supervision began on June 19, 2015, and expired on June 18, 2017.

9

discharged from probation. The defendant owes more than $18,000 in restitution to various businesses in the Virgin Islands – the restitution was converted to a civil judgment in 2020.

Since returning to Hawaii, the defendant has committed numerous traffic offenses, including multiple charges for driving without a license:

1. The defendant was given a citation for no motor vehicle driver's license on March 18, 2023, in Case number 1DTC-23-010682. The defendant failed to appear on June 20 and December 19, 2023, and bench warrants were issued. *See* Exhibit # B.

2. The defendant was given a citation for no motor vehicle driver's license on June 27, 2023, in case number 1DTC-23-013405. The defendant failed to appear on July 27 and December 27, 2023, and January 6, 2025, and bench warrants were issued. *See* Exhibit C.

3. The defendant was given a citation for no motor vehicle driver's license on October 3, 2023, in case number 1DTC-23-064707. The defendant failed to appear on December 19, 2023, and March 27 and July 11, 2024. *See* Exhibit D.

The defendant has a history of failing to show up for court, has ties outside the District of Hawaii, and has repeatedly demonstrated his inability to comply with

court-ordered conditions of supervision. The defendant has also committed felony offenses while on bond in pending cases.

The government also submits that the potential sentence provides further basis to flee. Because of the anticipated amount of loss and applicable specific offense characteristics, the total offense level could be as high as 26 even with a reduction for acceptance of responsibility. Under these circumstances, and considering the defendant's criminal history, the defendant could be facing a guideline range of 92 to 115 months plus an additional two years to run consecutive for a total of 116 to 139 months.

*The Nature and Seriousness of the Danger to the Community*

Section 3142(g)(4) provides that the Court shall consider "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." The defendant has conducted multiple overlapping schemes to defraud for at least the past seven years and has a history of committing such schemes going back to the nineties.

The victims of his crimes have experience devastating personal and financial impact because of his continued criminal behavior. They have had their credit ruined and have had to spend years trying to untangle themselves from the mess that the defendant left. They have been denied credit, subjected to daily calls from bill collectors, and have had to spend hours and hours trying to prove to various entities

that they were not the people who took out loans or were issued credit cards. Victims and witnesses to the defendant's fraudulent schemes have reported that he has resorted to threats and intimidation when they questioned his truthfulness or identity.

The defendant has a history of continuing to commit offenses while on supervision so it is the government's position that no condition or combination of conditions can be put in place to ensure that the defendant will not continue his criminal behavior.  While the offenses charged in the indictment happened some time ago, the defendant has continued his criminal behavior.

Investigators with the Department of Homeland Security executed a search warrant at the defendant's home on October 16, 2025, and found evidence of the defendant's current fraudulent schemes.  Between March and May 2025, the defendant used the personal identifying information belonging to J.P.  The defendant identified himself as "John Pyzel" and offered to do work on J.P.'s house and then took photographs of her identification, financial records, check books, credit cards and other items.  J.P. discovered five fraudulent checks drawn on her account totaling $41,787.26.  Additionally, J.P. found ACH transactions totaling approximately $155,896.40 deducted from her Central Pacific Bank Account. Documents connected to J.P. and to an LLC she owns and operates were located at the defendant's home.  The defendant admitted that he stole the money from J.P.

Danger to the community to justify detention may encompass pecuniary or economic harm. *See United States v. Reynolds*, 956 F.2d192, 192-93 (9th Cir. 1992) (a defendant convicted of mail fraud posed an economic or pecuniary danger to the community). There is justification from the defendant's past crimes and continued criminal behavior that the defendant poses a significant economic danger to the community if released from custody.

*There are no Conditions or Combination of Conditions that Can be Imposed to Reasonably Assure the Defendant's Appearance in Court of the Safety of the Community*

The proposed conditions will not assure the defendant's appearance in court or the safety of the community. The defendant failed to provide truthful information to the pretrial services office – the defendant's promise to abide by the conditions of release are not sufficient, even with home detention and GPS monitoring. As noted by the magistrate judge, the defendant is a grifter and a manipulator. Placing the defendant on an ankle monitor will merely notify pretrial services when the defendant removes the monitor or walks away from home confinement, it will not mitigate the risk. There is no reason to believe that these restrictions would prevent the defendant from fleeing if he chose to do so. Simply put, the restrictive conditions of release rely on the defendant's good faith compliance and there is nothing in the defendant's history that would suggest he will comply.

Additionally, in a group setting, the defendant will undoubtedly have access to other individuals and the ability to manipulate them for his own personal gain. The danger to the community cannot be understated.

## Conclusion

For these reasons, among others, the United States moves this Court to set a hearing on the United States' Motion to Revoke the Order of Release. Additionally, the United States request that the execution of the Order of Release be stayed only until a hearing can be held before the United States District Court in the District of Hawaii on the matter.

DATED: October 24, 2025, at Honolulu, Hawaii.

KENNETH M. SORENSON
Acting United States Attorney
District of Hawaii


By /s/ Jeannette S. Graviss
JEANNETTE S. GRAVISS
Assistant U.S. Attorney

CERTIFICATE OF SERVICE

I hereby certify that, on the date and by the method of service noted below, a true and correct copy of the foregoing was served on the following at their last known address:

Served via CM-ECF:

Melinda Yamaga
Federal Public Defender
Attorney for Defendant
JUSTIN C. LIKOUT

Served via email

Whitney Nakamura
U.S. PRETRIAL SERVICES
300 Ala Moana Blvd, Rm. 7-222
Honolulu, Hawaii 96850

DATED:   October 24, 2025, at Honolulu, Hawaii.


By /s/ Jeannette S. Graviss
JEANNETTE S. GRAVISS
Assistant U.S. Attorney